IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN MCALLISTER, | ) | CIVIL NO. 14-00057 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION TO |
| | ) | STRIKE AND GRANTING MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| UNITED STATES VETERANS | ) | |
| INITIATIVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO STRIKE AND
GRANTING MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Defendants United States Veterans Initiative ("USVI"),
Leonard Smith, and Kimberley Cook (collectively, "Defendants")
move for summary judgment as to all claims asserted against them
by Plaintiff John McAllister.  The court grants Defendants'
motion for summary judgment.

**II.      FACTUAL BACKGROUND.**

USVI, a nonprofit organization that provides services
to veterans, hired McAllister as an Outreach Coordinator for its
Barber's Point office on Oahu on or about May 13, 2013.  See ECF
No. 74-1, PageID # 472; ECF No. 75, PageID # 509; ECF No. 75-6,
PageID # 533.  Smith was McAllister's supervisor.  See ECF No.
75-7, PageID # 549.  Cook is the Executive Director of USVI's
Barber's Point office.  See ECF No. 75-9, PageID # 673.

McAllister says that, during his interview for the
Outreach Coordinator position, he told Smith that he needed

accommodations for a disability relating to his left leg and ankle.  See ECF No. 75-7, PageID # 539.  According to McAllister, he asked for a chair that fit him and allowed his legs to extend underneath his desk.  See id.

At the start of McAllister's employment with USVI, Smith told McAllister that he would be temporarily working out of the "outreach office."  See ECF No. 75-8, PageID # 634.  In that office, McAllister had a desk, chair, computer, and phone.  See ECF No. 75-9, PageID # 690.  McAllister says that the desk was broken, the chair was too small, and the computer was defective. See ECF No. 83-1, PageID # 780.

According to Smith, McAllister was to move out of his temporary placement in the outreach office and into a permanent placement in the "coordinator's office" in Room 101 once an intern vacated the space McAllister was to occupy.  See ECF No. 75-8, PageID #s 634, 637.  McAllister, however, says that the move to Room 101 was to occur when Smith himself moved into a different office.  See ECF No. 75-7, PageID # 539.  No move by McAllister to Room 101 actually occurred.  See ECF No. 75-9, PageID # 675.

On May 18, 2013, Katrishia Bratton, a USVI employee, reported concerns about the way McAllister treated another employee.  See ECF No. 75-8, PageID # 638.  Bratton later reported feeling threatened and harassed by McAllister in

interactions with him occurring on May 22, 2013.  See ECF No. 75-14, PageID # 712.  Cook asked Bratton to put her concerns into writing.  See ECF No. 75-9, PageID # 678.  Smith then discussed Bratton's reports with McAllister, and McAllister wrote a statement regarding those reports.  See ECF No. 75-8, PageID # 640; ECF No. 75-15, PageID # 714.  McAllister was not disciplined in connection with Bratton's May 2013 complaints.  See ECF No. 75-8, PageID # 640.

On May 29, 2013, Cook received an email from a person who identified himself as Chris Mathers.  The email said that McAllister had previously filed race discrimination complaints against various organizations.  See ECF No. 75-16, PageID # 716.  Cook told Smith about the email, but took no further action because she did not feel that the email was relevant to McAllister's employment at USVI.  See ECF No. 75-9, PageID # 685.

On or about June 12, 2013, Brian Minatoya, a USVI employee, told Smith that he felt uncomfortable with McAllister's communication style.  See ECF No. 75-17, PageID # 717; ECF No. 75-4, PageID # 529.  Michelle McDow-Gillard, another employee, also reported concerns about McAllister in June of 2013.  See ECF No. 75-18, PageID # 718.

On June 19, 2013, Cook, Smith, and McAllister met to discuss the fiscal year review of USVI's Outreach Department.  See ECF No. 75-3, PageID # 523.  Cook says that they also

3

discussed complaints about McAllister by other employees, but McAllister disputes that employee complaints were discussed.  <u>See</u> <u>id.</u> at PageID #s 523-24; ECF No. 83, PageID # 774.

On June 21, 2013, Bratton reported that McAllister was unwilling to learn certain tasks, to engage in active outreach in the community, and to offer guidance to other employees.  <u>See</u> ECF No. 75-19, PageID # 719.  Bratton also stated that McAllister's aggressive manner made others uncomfortable.  <u>See</u> <u>id.</u>

On June 26, 2013, Dana Manners reported that McAllister did not respect her, was unwilling to participate in training, and was verbally aggressive towards another employee.  <u>See</u> ECF No. 75-20, PageID # 720.

On June 28, 2013, USVI received an email from someone who identified himself as "Chris (program manager of housing division)" alleging unprofessional conduct by McAllister during an outreach visit.  <u>See</u> ECF No. 75-21, PageID # 722.

On July 9, 2013, Macy Sevaaetasi, a USVI employee, reported that, among other things, McAllister had verbally attacked her and had been disrespectful to other employees.  <u>See</u> ECF No. 75-23, PageID #s 724-25.

Cook and Smith met with McAllister on July 9, 2013. <u>See</u> ECF No. 75-22, PageID # 723.  According to Smith and Cook, McAllister became agitated during the meeting and said that he was stressed, his blood pressure was rising, and he needed to

4

speak with his doctor.  See ECF No. 75-8, PageID # 648; ECF No. 75-9, PageID #s 686-87.  McAllister left the room to call his doctor, and the meeting ended.  See ECF No. 75-7, PageID # 575; ECF No. 75-8, PageID #s 648-49.

McAllister did not return to work after July 9, 2013. See ECF No. 75-7, PageID #s 575-76.  As of July 9, 2013, McAllister had not completed his 90-day probationary period.  See ECF No. 75-6, PageID # 533.[1]  From July 2013 to April 2014, McAllister submitted numerous doctor's notes relating to his absence.  See ECF No. 75-24; see also ECF No. 75-25, PageID # 742.

On January 31, 2014, McAllister filed this lawsuit against USVI and against Smith and Cook in their individual and official capacities.  See ECF No. 1.

On March 4, 2014, USVI informed McAllister by letter that it was unable to hold his position open indefinitely, and that if he failed to return to work, USVI would be forced to end his employment.  See ECF No. 75-25, PageID #s 742-43.  USVI also addressed references to requests for accommodations, stating that the private work space, phone, computer, and chair allegedly requested were provided before McAllister went on leave and

---

[1] Although Defendants argue that McAllister, as an at-will employee and a probationary employee, may not proceed at all, Defendants cite no law suggesting that an at-will or probationary employee has no right to claim race, sex, or disability discrimination.

remained available if McAllister returned to work.  See id.

Following USVI's March 4 letter, McAllister indicated that he would be returning to work on April 1, 2014.  See ECF No. 75-26, PageID # 744.  However, on April 1, 2014, McAllister submitted a letter indicating that he would not be able to return to work until April 22, 2014.  See id.  On April 22, 2014, McAllister submitted another letter indicating that he would not be able to return to work until May 20, 2014.  See id.

On April 24, 2014, USVI informed McAlllister that it was terminating his employment.  See id.  McAllister had, by that time, been away from work for more than nine months.

In his Third Amended Complaint, filed on November 13, 2014, McAllister asserts that Defendants: (1) discriminated and retaliated against him in violation of Title VII (42 U.S.C. § 2000e), 42 U.S.C. § 1981, 42 U.S.C. § 1981a, and section 378-2 of Hawaii Revised Statutes; (2) violated the Americans with Disabilities Act ("ADA"); and (3) intentionally inflicted emotional distress.[2]  See id.

_____

[2] McAllister's Complaint also alleges, in what can only be described as a passing reference, that Defendants (1) violated Department of Education rules, (2) engaged in promotional discrimination, and (3) committed a tortious breach of contract. See ECF No. 38, PageID # 252.  These allegations are nowhere fleshed out.  Specific DOE rules are not identified.  Nor is any actual promotion identified as having been sought by McAllister. McAllister does not point to any contract or particular contract provision that was tortiously breached.  Quite apart from the absence of specificity in the Third Amended Complaint about these alleged wrongdoings, these references are not supported by any

6

Defendants seek summary judgment in their favor as to all claims asserted against them.  See ECF No. 74.

**III.     STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movant must support his or her position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element

admissible evidence.  The court therefore considers those
allegations to have been abandoned by McAllister and does not
address them in the present order.

7

at trial.  See id. at 323.  A moving party without the ultimate

burden of persuasion at trial--usually, but not always, the

defendant--has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102

(9th Cir. 2000).

        The burden initially falls on the moving party to

identify for the court those "portions of the materials on file

that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,

477 U.S. at 323).  "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that

there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986) (footnote omitted).

        The nonmoving party must set forth specific facts

showing that there is a genuine issue for trial.  T.W. Elec.

Serv., Inc., 809 F.2d at 630.  At least some "'significant

probative evidence tending to support the complaint'" must be

produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv.

Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134

("A scintilla of evidence or evidence that is merely colorable or

not significantly probative does not present a genuine issue of

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

## IV.     MCALLISTER'S MOTION TO STRIKE IS DENIED.

McAllister asks this court to strike Defendants' concise statement of facts, contending that it violates Local Rule 56.1 because it is seven pages long and does not contain a certificate of compliance. See ECF No. 78. The court denies

McAllister's motion to strike.

Defendants have submitted a certificate of compliance stating that their concise statement of facts contains 1,464 words. See ECF No. 75-1. Local Rule 56.1(d) requires that a concise statement "be no longer than five (5) pages, unless it contains no more than 1500 words." Because Defendants have not violated Local Rule 56.1(d), McAllister's motion to strike is denied.

**V.        ANALYSIS.**

The Third Amended Complaint contains seven Causes of Action.

Cause of Action I alleges that Defendants violated Title VII and "Hawaii State law," which this court assumes is intended to be a reference to section 378-2 of Hawaii Revised Statutes, which is Hawaii's corollary to Title VII. Cause of Action I also refers to violations of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, but, because nothing in the record suggests that any Defendant was acting under color of state law, this court disregards these references to any purported claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 934-36 (1982) (Fourteenth Amendment violations by persons acting under color of state law may be redressed by action under § 1983).

Like most of McAllister's Causes of Action, Cause of Action I is unclear with respect to which Defendants McAllister seeks to hold liable. Cause of Action I begins with a reference to "U.S. Vets," but then quickly moves to allegations against "Defendants." In the interest of reading the Third Amended Complaint as liberally as possible, the court treats Causes of Action that refer to "Defendants" as brought against both USVI and the individual Defendants, although McAllister's counsel appears in the Third Amended Complaint to be well aware of the limitations in Title VII and parts of chapter 378 on claims against individual employees.

Relying on arguments McAllister makes in the memorandum he submitted in opposition to the present summary judgment motion, this court reads Count I as asserting race and gender discrimination. Finally, Cause of Action I includes allegations going not only to alleged discrimination but also to retaliation, notwithstanding separate retaliation allegations in Count V.

Cause of Action II alleges that Defendants are liable for the intentional infliction of emotional distress.

Cause of Action III alleges violations of 42 U.S.C. §§ 1981 and 1981a against "Defendants."

Cause of Action IV alleges violations of the ADA and "Hawaii State law" by all "Defendants."

Cause of Action V is the separate retaliation claim referred to earlier in this order. It alleges violations of Title VII and "Hawaii State law."

Cause of Action VI reads like a general claim against "Defendants" under chapter 378 of Hawaii Revised Statutes. McAllister's opposition memorandum indicates that the Third Amended Complaint asserts not only section 378-2 allegations, but also a violation of Haw. Rev. Stat. § 378-32.

Cause of Action VII alleges that Cook and Smith aided and abetted each other and USVI in discriminating against McAllister. This is a claim that is not barred by the limitations on other claims against employees under chapter 378, although, as discussed below, it raises other problems.

In the discussion that follows, the court addresses the alleged race and/or gender discrimination claims and the alleged related retaliation in violation of Title VII, § 1981, § 1981a, and/or section 378-2 together. The disability discrimination claims under the ADA and section 378-2 are then addressed. The

court's analysis concludes by addressing the three state law claims that do not rely on section 378-2(a)(1) (i.e., claims for intentional infliction of emotional distress, violations of section 378-32, and aiding and abetting).

      **A.**    **McAllister Does Not Show That There Are Triable Issues of Race and/or Gender Employment Discrimination or of Retaliation Relating to Such Discrimination in Violation of Title VII, § 1981, § 1981a, or Section 378-2 of Hawaii Revised Statutes.**

           **1.**    **Section 1981a Does Not Provide an Independent Cause of Action.**

Although McAllister claims that Defendants have violated 42 U.S.C. § 1981a, that section does not provide McAllister with an independent cause of action. See, e.g., Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc., No. CV-10-1013-PHX-GMS, 2011 WL 1770784, at *3 n. 2 (D. Ariz. May 10, 2011); Pimentel v. Orloff, No. C-08-0249 MMC, 2008 WL 3876173, at *2 (N.D. Cal. Aug. 19, 2008); accord Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998) ("Section § 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provides an additional remedy for unlawful intentional discrimination" (internal quotation marks omitted)). As a result, McAllister may not maintain a claim against Defendants under section 1981a.

### 2. Claims Against Individual Defendants Are Not Cognizable Under Title VII Or Section 378-2.

McAllister asserts claims under Title VII and section 378-2(a)(1) of Hawaii Revised Statutes against Leonard Smith and Kimberley Cook in their individual capacities. Claims against individuals are not cognizable under Title VII. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993) (individual employees are not subject to liability under Title VII). Claims under section 378-2(a)(1) against individuals are similarly disallowed. Lales v. Wholesale Motors Co., 133 Haw. 332, 344, 328 P.3d 341, 353 (2014) ("Individual employees are . . . not personally liable as 'employers' for harassment and retaliation claims under [section 378-2]").

Given this clear law, Smith and Cook are entitled to summary judgment on all claims against them under Title VII and section 378-2(a)(1) of Hawaii Revised Statutes, although they may be sued under 42 U.S.C. § 1981. They may also be sued under the "aiding and abetting" provision in Haw. Rev. Stat. § 378-2(a)(3), discussed later in this order.

### 3. Defendants are Entitled to Summary Judgment on McAllister's Disparate Treatment Claims.

McAllister contends that Defendants discriminated against him in the terms and conditions of his employment based on his race and gender in violation of 42 U.S.C. § 2000e-2(a) and section 378-2(a)(1) of Hawaii Revised Statutes. As noted above,

he also alleges race discrimination in violation of 42 U.S.C. § 1981.  See ECF No. 38, PageID #s 251, 252-53, 254-55; ECF No. 87, PageID #s 947-53.

Discrimination claims under each of these three statutory frameworks are analyzed using the burden-shifting procedure set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  See Metoyer v. Chassman, 504 F.3d 919, 930-31 (9th Cir. 2007) (applying McDonnell Douglas framework to § 1981 claims); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (McDonnell Douglas framework applies to Title VII claims); Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 425-26, 32 P.3d 52, 69-70 (2001) (McDonnell Douglas framework applies to discrimination claims under section 378-2 of Hawaii Revised Statutes).

Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination by offering proof "(1) that the plaintiff belongs to a class of [protected] persons . . . ; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."  Cornwell, 439 F.3d at 1028.

A prima facie case of discrimination "creates a presumption that the employer unlawfully discriminated against the employee." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (internal quotation marks omitted). To rebut this presumption, "the defendant must produce admissible evidence showing that the defendant undertook the challenged employment action for a legitimate, nondiscriminatory reason." Cornwell, 439 F.3d at 1028 (internal quotation marks omitted). "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (internal quotation marks omitted). A plaintiff "may rely on circumstantial evidence to show pretext," but "such evidence must be both specific and substantial." Id.

McAllister fails to establish a prima facie case of discrimination. Although McAllister says that he "performed his job adequately or satisfactorily," ECF No. 87, PageID # 974, he fails to offer any specific facts or evidence to support his contention. In fact, he did not come to USVI's offices at all after July 9, 2013. At the summary judgment stage, the nonmoving party must set forth specific facts showing that there is a

16

genuine issue for trial.  T.W. Elec. Serv., Inc., 809 F.2d at
630.  At least some "significant probative evidence tending to
support the complaint" must be produced.  Id. (internal quotation
marks omitted).  Mere regurgitation of the elements of a prima
facie case of discrimination does not suffice to avoid summary
judgment.

     McAllister also fails to establish that he suffered an
adverse employment action.  An adverse employment action "is one
that materially affects the compensation, terms, conditions, or
privileges of . . . employment."  Davis v. Team Elec. Co., 520
F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and
brackets omitted).

     McAllister contends that Defendants subjected him to an
adverse employment action by investigating him "after receiving a
spurious secret complaint of prior protected civil rights
activity, and after Plaintiff has complained about harassment
race and gender discrimination by Leonard Smith."[3]  See ECF No
87, PageID #s 978.  McAllister does not point to any evidence
that a discriminatory investigation occurred.  Nothing in the
record suggests that race, gender, or disability affected any
Defendant's investigatory actions, or that anything adverse

_____

     [3] McAllister identifies this investigation as an adverse
employment action in the context of his retaliation claims.  See
ECF No. 87, PageID #s 977-78.  However, in an abundance of
caution, the court also considers his contentions regarding the
investigation in the context of his discrimination claims.

flowed from any alleged investigation.  See Celotex Corp., 477
U.S. at 323-24 ("One of the principal purposes of summary
judgment is to identify and dispose of factually unsupported
claims and defenses."); Marquardt v. United Airlines, Inc., 781
F. Supp. 1487, 1490 (D. Haw. 1992) ("The opposing party cannot
stand on its pleadings, nor can it simply assert that it will be
able to discredit the movant's evidence at trial. . . .  There is
no genuine issue of fact if the opposing party fails to offer
evidence sufficient to establish the existence of an element
essential to that party's case.").  For their part, Defendants
cite evidence to support their position that no adverse action
was taken with respect to the "secret complaint" McAllister
references.  See ECF No. 92, PageID # 1005; ECF No. 75-9, PageID
# 685.

     McAllister suffered no discipline or other adverse
action in connection with any investigation.  The mere act of
conducting an investigation, with no resulting adverse effect on
McAllister, does not demonstrate a material effect on
McAllister's compensation, terms, conditions, or privileges of
employment.  See, e.g., Longmire v. City of Oakland, No. C
10-01465 JSW, 2011 WL 5520958, at *5 (N.D. Cal. Nov. 14, 2011)
("Mere investigation . . . [is] not considered [an] adverse
employment action[].").

18

Nor does Defendants' alleged failure to move McAllister to Room 101 or to provide him with the desk and chair he believed he was promised constitute an adverse employment action under Title VII, section 378-2, or § 1981. McAllister fails to show that those actions caused "a material employment disadvantage, such as a tangible change in duties, working conditions or pay." Delacruz v. Tripler Army Med., 507 F. Supp. 2d 1117, 1123 (D. Haw. 2007) (internal quotation marks omitted). McAllister may have been dissatisfied with remaining in his temporary office space and with the alleged failure to receive the desk or chair he says he was promised, but "not every employment decision amounts to an adverse employment action." Id. at 1124. More importantly, he presents only assertions and conclusion, but no evidence of any causal link between discriminatory animus, or even any investigation, and the failure to move his office or provide equipment.

McAllister also contends that Defendants subjected him to an adverse employment action by removing an employee, Macy Sevaaetasi, from his supervision.[4]  See ECF No. 87, PageID # 977. The transfer of job duties may be an adverse employment action in the context of retaliation. See, e.g., Ray v. Henderson, 217

---

[4] McAllister raises the removal of Macy Sevaaetasi from his supervision as an adverse employment action in the context of his retaliation claims. See ECF No. 87, PageID # 977. However, again in an abundance of caution, the court considers this contention in the context of his discrimination claims.

19

F.3d 1234, 1241 (9th Cir. 2000); Rodriguez v. Pierce Cnty., No.
C05-5140RBL, 2006 WL 1009344, at *3 (W.D. Wash. Apr. 14, 2006).
Even assuming that the transfer of job duties may be considered
an adverse employment action in the context of a disparate
treatment claim, under which the definition of an adverse
employment action is more restrictive than that applicable to a
retaliation claim, see Campbell v. Knife River Corp.--Nw., 783 F.
Supp. 2d 1137, 1154 (D. Or. 2011), McAllister's race and gender
discrimination claims fail, as discussed further below.

        The fourth element of a prima facie case of
discrimination concerns an employer's different treatment of a
similarly situated employee.  McAllister says that a Caucasian
employee received the chair he was promised.  At best, then,
McAllister suffered different treatment only with respect to the
chair.  There is a total lack of discussion of disparate
treatment in connection with any of the other incidents
McAllister raises.

        Even assuming McAllister establishes a prima facie case
of discrimination with respect to the chair (or any other
matter), Defendants are entitled to summary judgment on
McAllister's disparate treatment claims.  Defendants offer
legitimate, nondiscriminatory reasons for the actions McAllister
complains about.  See ECF No. 75-8, PageID #s 635, 645
(McAllister was not told that a new desk was ordered for him, and

the two new desks that were ordered were for individuals other than McAllister); id. at PageID # 637 (a vacant desk in Room 108 was supposed to be moved to Room 101 for McAllister); id. at PageID #s 644-45 (McAllister was supposed to move to Room 101 when an intern vacated space in that office).

At the hearing on the present motion, defense counsel indicated that Macy Sevaaetasi was removed from McAllister's supervision given the pending investigation into her complaints that McAllister was threatening and had created an uncomfortable work environment. Although Defendants do not cite any evidence in the record that expressly ties the ongoing investigation to the transfer of supervision, there is ample evidence of Sevaaetasi's concerns and of the proximity in time between her expressions of concern and the transfer of supervision, making the connection clear.

McAllister fails to demonstrate that Defendants' articulated reasons for the challenged actions are pretextual. Villiarimo, 281 F.3d at 1062 (if the defendant produces evidence supporting a legitimate, nondiscriminatory reason for a challenged action, the plaintiff must show that the defendant's articulated reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (internal quotation marks

omitted)).  McAllister produces no evidence suggesting that
Defendants had a discriminatory motive in taking any of the
actions in issue.  Nor does he show that Defendants' proffered
explanations are unworthy of credence.  McAllister's bare,
conclusory assertions that race and gender discrimination were at
play are insufficient to demonstrate pretext.

Although such an argument does not appear to be clearly
reflected in McAllister's papers, to the extent McAllister is
arguing that his termination was based on race or gender
discrimination, the same conclusions regarding pretext apply.
Defendants contend that McAllister was terminated because he
failed to attend work for over nine months without committing to
a firm return date.  See ECF 74-1, PageID # 483; ECF No. 75-9,
PageID # 684.  McAllister fails to show that Defendants'
articulated reason for his termination is pretextual.  McAllister
also fails to overcome the strong inference against
discrimination that arises when "the same actor is responsible
for both the hiring and the firing of a discrimination plaintiff,
and both actions occur within a short period of time."  Bradley
v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996).

Therefore, even assuming McAllister establishes a prima
facie case of discrimination, Defendants are entitled to summary
judgment on those claims for which Defendants have offered

legitimate, nondiscriminatory explanations for the challenged conduct.

In his memorandum opposing Defendants' motion for summary judgment, McAllister characterizes some of the complaints raised by other employees about him as evidencing race and gender discrimination. See, e.g., ECF No. 87, PageID #s 950, 951, 952, 962, 968. McAllister provides no reason that those complaints by coworkers should be attributed to Defendants. For that reason, Defendants, not having discriminated against McAllister in handling those allegedly discriminatory complaints, are entitled to summary judgment on any race and gender discrimination claim based on those co-worker complaints.[5]

### 4. Defendants are Entitled to Summary Judgment on McAllister's Hostile Work Environment Claims.

In his opposition memorandum, McAllister says he is also asserting employment discrimination in the form of a hostile work environment. To succeed on a hostile work environment claim, a plaintiff must "establish a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment." Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d

---

[5] In his opposition, McAllister also says that a complaint by Katrishia Bratton "shows a double standard in conduct discipline [sic] at U.S. Vets." ECF No. 87, PageID # 968. McAllister does not elaborate on that assertion and there does not appear to be any evidence in the record that McAllister was disciplined or suffered any adverse employment action as a result of Bratton's complaints. See ECF No. 75-8, PageID # 640.

864, 871 (9th Cir. 2001) (internal quotation marks omitted).  To
satisfy this requirement, a plaintiff must prove that the work
environment was "both objectively and subjectively offensive, one
that a reasonable person would find hostile or abusive, and one
that the victim in fact did perceive to be so."  Id. at 871-72
(internal quotation marks omitted).  The factors considered in
determining whether a work environment is objectively offensive
"include the frequency of discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably interferes with
an employee's work performance."  McGinest v. GTE Serv. Corp.,
360 F.3d 1103, 1113 (9th Cir. 2004).

        McAllister points to the following conduct as the basis
for his hostile work environment claim: (1) Defendants'
solicitation of written statements from employees that had raised
concerns about him, ECF No. 87, PageID # 949; (2) Defendants'
removal of an employee from his supervision, id.; (3) Bratton's
complaints about him and Defendants' "contemplation" of them, id.
at PageID # 952; and (4) Defendants' failure to move him to Room
101, id. at PageID # 950.  At the hearing on the present motion,
McAllister's counsel asserted for the first time that a hostile
work environment was also evidenced by Defendants' circulation of
"hate emails" behind McAllister's back, namely the email dated

                            24

May 29, 2013, from Chris Mathers, and the email dated June 28, 2013, from a program manager of a housing division.

McAllister fails to demonstrate that the above conduct created a hostile work environment. Those actions do not rise to the level of "ongoing and persistent harassment severe enough to alter the conditions of employment." Nichols, 256 F.3d at 871 (internal quotation marks omitted). McAllister fails to produce any evidence demonstrating that his work environment was one that a reasonable person would find hostile or abusive, as required to sustain his claim. McAllister points to a characterization of the work environment in the letter of October 1, 2014, sent by his physician to USVI, but the physician, who must have relied on McAllister's description, was in no position to have had personal knowledge of the work environment. See ECF No. 84-2, PageID # 834.

McAllister also fails to tie the conduct he complains about to his race or sex. See Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003) ("To establish the prima facie hostile work environment claim under either Title VII or § 1981, [plaintiff] must raise a triable issue of fact as to whether . . . she was 'subjected to verbal or physical conduct' because of her race."); Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003)("To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show . . . that he was

subjected to verbal or physical conduct of a racial or sexual nature."). There is no indication in McAllister's papers or in the record that the conduct McAllister cites in support of his hostile work environment claim related to his race or sex. Even if a co-worker's complaint could be said to have reflected race or sex discrimination, there is no authority for imposing liability on Defendants for those comments.

Defendants are entitled to summary judgment on McAllister's hostile work environment claims.

### 5. Defendants are Entitled to Summary Judgment on McAllister's Retaliation Claims.

McAllister contends that he was subject to retaliation in violation of federal law (Title VII and § 1981) and state law (section 378-2 of Hawaii Revised Statutes). Defendants are entitled to summary judgment on all of McAllister's retaliation claims.

To establish a prima facie case of retaliation, McAllister must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. Surrell v. California Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008); see also Hodges v. CGI Fed. Def. & Intelligence, Civ. No. 12-00420 LEK-BMK, 2014 WL 5528228, at *10 (D. Haw. Oct. 31, 2014) (applying the retaliation elements applicable to federal claims to section 378-2 of Hawaii Revised Statutes). If McAllister

establishes a prima facie case, "the burden shifts to the defendant[s] to set forth a legitimate, non-retaliatory reason for [their] actions." See Surrell, 518 F.3d at 1108. That is, "at that point, [McAllister] must produce evidence to show that the stated reasons were a pretext for retaliation." See id.

McAllister argues that he satisfies the first element of the prima facie case of retaliation because he must have been retaliated against for having filed civil rights complaints against different employers in the past, as detailed in the email Cook received from Chris Mathers on May 29, 2013. McAllister also says he engaged in protected activity by raising concerns with Defendants about their allegedly discriminatory conduct. See ECF No. 38, PageID #s 246, 254; ECF No. 87, PageID #s 959, 975. "[T]he filing of a charge or a complaint . . . as well as engaging in other activity intended to oppose an employer's discriminatory practices" constitute protected activities. Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) (internal quotation marks and brackets omitted).

With respect to the second element of a prima facie case, McAllister asserts that the following adverse employment actions were taken against him in retaliation for his protected activity: (1) he was the subject of "hate email" from Chris Mathers; (2) he was the subject of complaints by Bratton; (3) the provision of ADA accommodations was delayed; (4) Defendants

investigated him; (5) he was prevented from doing his duties by being called back to the office from outreach meetings; and (6) he was terminated. See ECF No. 87, PageID #s 959, 967, 973, 975, 978.

In the retaliation context, an adverse employment action is an action that is "reasonably likely to deter employees from engaging in protected activity." Vasquez, 349 F.3d at 646. "Normally, 'petty slights, minor annoyances, and simple lack of good manners' will not deter a reasonable worker from making a charge of discrimination, while termination, dissemination of a negative employment reference, issuance of an undeserved performance review, and refusal to consider a plaintiff for a promotion may dissuade a worker from making that charge." Lee v. Hawaii, Civ. No. 09-00032 SOM/KSC, 2010 WL 235009, at *5 (D. Haw. Jan. 20, 2010).

The "hate email" from Chris Mathers was not an adverse employment action by USVI. The email was sent to USVI, and there is no indication that Defendants should, or could, have stopped the sending of such email. There is no evidence in the record that McAllister was subjected to any discipline or other adverse action in connection with that email.

Nor are Bratton's complaints adverse employment actions. McAllister may have been distressed by Bratton's expression of concerns about him, but he does not show that

Defendants took any action in connection with Bratton's complaints "reasonably likely to deter employees from engaging in protected activity."  Vasquez, 349 F.3d at 646.

McAllister also fails to demonstrate that the alleged delay in the provision of ADA accommodations was an adverse employment action.  Even assuming that a delay in ADA accommodations would likely deter employees from engaging in protected activity, McAllister fails to offer any evidence of a connection between his protected activity and the alleged delay in accommodations.

Being subject to an investigation, on its own, does not constitute an adverse employment action.  See Lee, 2010 WL 235009, at *7 (investigation itself does not constitute an adverse employment action); Niimi-Montalbo v. White, 243 F. Supp. 2d 1109, 1127 (D. Haw. 2003) ("While an investigation might be undesirable or distasteful, it does not automatically or necessarily disadvantage an employee.").

McAllister's argument that he was retaliated against by being called back to the office from outreach meetings was raised for the first time at the hearing on the present motion and may, therefore, be disregarded.  However, even if the court considers this assertion, McAllister does not show that allegedly being called back to the office on two occasions constitutes an adverse employment action.  There is no reason to think that such an

action would be "reasonably likely to deter employees from engaging in protected activity." Vasquez, 349 F.3d at 646. There is no evidence that this affected McAllister's position or pay. Minor annoyances are not generally considered adverse employment actions. See Lee, 2010 WL 235009, at *5.

Termination certainly constitutes an adverse employment action, but McAllister fails to show any connection between his allegedly protected activity and his termination, just as he fails to connect the other allegedly retaliatory actions to adverse employment actions. Even assuming each action constitutes an adverse employment action, McAllister fails to show any causal connection between his protected activity and those actions.

Moreover, Defendants set forth a legitimate, non-retaliatory reason for terminating McAllister. Defendants contend that McAllister was terminated because he did not return to work for more than nine months. See ECF No. 75-26, PageID # 744; ECF No. 74-1, PageID # 499. McAllister fails to produce any evidence demonstrating that Defendants' stated reason for his termination was a pretext for retaliation.

Defendants are entitled to summary judgment on McAllister's retaliation claims.

### B. USVI is Entitled to Summary Judgment on McAllister's Disability Discrimination Claim.

Under the ADA, employers are required to make

"reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); see also Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232 (9th Cir. 2003). Section 378-2(a) similarly prohibits discrimination on the basis of disability under Hawaii law. Although Cause of Action IV refers to "Defendants," McAllister may not proceed against Cook and Smith on his disability discrimination claims. See Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1038 (9th Cir. 2006) ("[I]ndividual defendants cannot be held personally liable for violations of the ADA."). Nor does this court countenance the Equal Protection Clause allegations in Cause of Action IV, given the absence of any evidence that any Defendant acted under color of state law.

McAllister contends that USVI violated the ADA by failing to provide him with reasonable accommodations. See ECF No. 87, PageID #s 945, 966. McAllister, however, provides little, if any, analysis to support his claim.

McAllister says that he has a leg and ankle injury, but does not demonstrate that this injury qualifies as a disability under the ADA. A "disability" is defined as: "(A) a physical or

31

mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1). McAllister's papers do not indicate whether he is claiming to be disabled under the ADA through substantial limitation of a major life activity, by having a record of such impairment, or by being regarded as having such an impairment. McAllister simply states, in conclusory fashion, that he has a disability. But having an injury or living with an impairment does not necessarily guarantee protection by the ADA. As noted by the Ninth Circuit, "The ADA defines 'disability' with specificity as a term of art. Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA." Sanders, 91 F.3d at 1354 n.2.

Given the sparse discussion in McAllister's papers relevant to his "failure to accommodate" claim, this court asked McAllister's counsel about the claim at the hearing on the present motion. McAllister's counsel appeared to argue that McAllister's leg and ankle injury qualified as a disability under the ADA because it inhibited McAllister's ability to stand and work for lengths of time. Standing and working are major life activities. However, the record indicates that McAllister did not think he was limited in his ability to do his job well. See

32

ECF No. 75-7, PageID #s 566, 572.  Even assuming that at least until July 9, 2013, his last day of work at USVI, there is evidence in the record to support counsel's assertions, McAllister cannot avoid summary judgment on his disability claim because he fails to show that he is a "qualified individual."

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); see also Bates v. United Parcel Serv., Inc., 511 F.3d 974, 989 (9th Cir. 2007). McAllister has not demonstrated, or even asserted, that he is a qualified individual.

After July 9, 2013, the last day McAllister was at work at USVI, McAllister repeatedly sent USVI doctor's notes saying McAllister could not even show up at work.  This continued even after USVI said that the equipment McAllister said he needed was (and had been) available to him.  Even if McAllister disputes the availability of the equipment, he does not show that he could have performed the essential functions of his position with accommodation.

USVI is entitled to summary judgment on McAllister's claim that USVI failed to provide reasonable accommodations.

### C.   McAllister's Remaining State Law Claims Fail.

#### 1.   McAllister's Claim Under Section 378-32 of Hawaii Revised Statutes Fails.

In his opposition to Defendants' motion for summary judgment, McAllister argues that he was terminated in violation of section 378-32 of Hawaii Revised Statutes.  <u>See</u> ECF No. 87, PageID #s 976-78.  McAllister may not proceed under section 378-32.

In the first place, the Third Amended Complaint does not even mention section 378-32, either explicitly or implicitly. Section 378-32 makes it unlawful under Hawaii law for any employer to suspend, discharge, or discriminate against any employee "[s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing."  Section 378-32 gives an aggrieved employee first preference for reemployment.

At the hearing on the present motion, McAllister's counsel acknowledged that the Complaint does not specifically mention section 378-32, but directed the court's attention to paragraph 54 of the Complaint, arguing that the factual recitation in that paragraph falls within the prohibition of

34

section 378-32.  <u>See</u> ECF No. 38, PageID # 255.  Paragraph 54 says:

> Mr. McAllister was terminated in violation of Hawaii State law due to the fact that his doctor continued to hold him out of work due to a job related medical condition, rather than engage in a meaningful met [sic] and confer dialog and provide the ADA accommodations that Plaintiff and his doctor previously requested.

<u>Id.</u>  These allegations are insufficient to put Defendants on notice of a section 378-32 claim.  The language of paragraph 54 is repeated in other causes of action throughout the Complaint, and in other causes of action appears to be a reference to Haw. Rev. Stat. § 378-2(a)(1), not section 378-32.  Nothing in paragraph 54, which refers specifically to the ADA, puts Defendants on notice that section 378-32 is referred to.

Even if the Third Amended Complaint could be read as including a claim under section 378-32 (e.g., by virtue of the general chapter 378 claim asserted in Cause of Action VI), any such claim fails because McAllister does not show that he meets the prerequisites for such a claim.

McAllister provides no indication as to what evidence he would present at trial to show that he was discharged or otherwise discriminated against "solely" because he suffered a work injury, as required by section 378-32.  Nor does he even attempt to show how he escapes the express exception in section 378-32 when an employee "is no longer capable of performing the

35

employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing."  McAllister was away from the job for more than nine months.  His reliance on doctor's recommendations indicates that he was no longer capable of performing his work, and he identifies no alternate USVI position that he could have worked at.

Notably, McAllister makes no attempt to address the statutory requirement that his injury be "compensable under chapter 386," which contains Hawaii's Worker's Compensation Law. McAllister contends that he suffered discrimination based on his race, gender, and disability.  Hawaii's courts have declined to say that chapter 386-5, which bars tort actions for matters for which worker's compensation is available under chapter 386, extends to claims for race or sex discrimination.  See Bolla v. Univ. of Haw., 2014 WL 80554, at *2 (App. 2014); Furukawa v. Honolulu Zoological Soc., 85 Haw. 7, 18, 936 P.2d 643, 654 (1997).  Possibly, Hawaii's courts would similarly decline to extend to disability claims the doctrine of worker's compensation benefits as the exclusive remedy for on-the-job injuries.  Of course, the rulings by Hawaii's courts on this subject might mean only that worker's compensation benefits are not the exclusive remedy when discrimination is involved, not that worker's compensation benefits are unavailable in discrimination cases.

That is, the preceding decisions might allow recovery of both worker's compensation benefits and tort damages. Neither side addresses this issue, but it is McAllister who must show a triable issue, and his failure to show that he was discharged "solely" because of a work injury or that he was indeed capable of performing his job or the duties of another USVI position doom any section 378-32 claim.

> ### 2. Smith and Cook are Entitled to Summary Judgment on McAllister's "Aiding and Abetting" Claim Under Section 378-2(a)(3) of Hawaii Revised Statutes.

Smith and Cook seek summary judgment with respect to the section 378-2(a)(3) claim against them. Under section 378-2(a)(3), it is an unlawful discriminatory practice "[f]or any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so." An aiding and abetting claim may be brought against individual employees. See Lales, 133 Haw. 332, 345, 328 P.3d 341, 354 (2014).

Smith and Cook begin their challenge to the aiding and abetting claim by contending that McAllister failed to exhaust his administrative remedies with respect to that claim by failing to name Smith and Cook in his Hawaii Civil Rights Commission ("HCRC") charges. See ECF No. 74-1, PageID # 497; ECF No. 104-7, PageID # 1146. The court agrees with Smith and Cook that

McAllister failed to exhaust two of his three theories of section 378-2(a)(3) liability.

Generally speaking, a plaintiff may not file a civil action based on discrimination against parties that were not named in the plaintiff's HCRC charge. See Simmons v. Aqua Hotels & Resorts, Inc., 130 Haw. 325, 329, 310 P.3d 1026, 1030 (App. 2013). However, there are a number of exceptions to this general rule. These exceptions were originally established by the Ninth Circuit in the context of Title VII claims in an EEOC charge, but have been applied in the context of claims under section 378-2. See id.

Under these exceptions, suit is permitted against an unnamed party when: (1) the unnamed party was involved in the acts giving rise to the HCRC charge; (2) the HCRC or the unnamed party should have anticipated a section 378-2 claim against the unnamed party; (3) the named party is a principal or agent of the unnamed party or they are substantially identical; (4) the HCRC could have inferred that the unnamed party violated part I of chapter 378; or (5) the unnamed party had notice of the HCRC conciliation efforts and participated in the HCRC proceedings. See id. (citing Sosa v. Hiraoka, 920 F.2d 1451, 1458-59 (9th Cir. 1990)).

These exceptions apply only if a claim against an unnamed party falls within the scope of the HCRC charge. That

is, claims asserted for the first time in a lawsuit may be considered only "if those claims fell within the scope of the agency's actual investigation, or are 'like or reasonably related to' the allegations made before the agency, such that they would have been included within the scope of an investigation." Pfeffer, 2009 WL 37519, at *10.

While acknowledging that Smith and Cook were not named in the HCRC charges actually signed and filed by McAllister, see ECF No. 104, McAllister does not establish the application of any exception to the general unnamed party rule with respect to the following theories of liability he advances: (1) that Smith and Cook violated section 378-2(a)(3) by aiding and abetting the decision by Dan Cude, USVI's Vice President of Human Resources, to terminate McAllister; and (2) that Cook aided and abetted Smith "in retaliating against Mr. McAllister, after Mr. McAllister raised the issue of his disparate treatment . . . created by Defendants . . . after the Defendants hired a Caucasian co-ordinator months after they hired Plaintiff McAllister and immediately created an office and provided office furniture to this new Caucasian co-ordinator, which had been long promised but never produced for the Plaintiff." ECF No. 38, PageID # 246; ECF No. 87, PageID # 962.

At the hearing on the present motion, McAllister's counsel argued that McAllister's claims against Smith and Cook

may proceed because Smith and Cook were specifically mentioned in the body of McAllister's HCRC charge. In support of this argument, McAllister's counsel cited an undated and unsigned version of an HCRC charge that does not appear to have been filed with the HCRC and cannot, therefore, serve as evidence of what McAllister's HCRC charge placed in issue. See ECF No. 83-4, PageID #s 806-07.

Even assuming this document was in fact filed with the HCRC, McAllister would still be barred from proceeding on his claims that Smith and Cook violated section 378-2(a)(3) by aiding and abetting Cude's decision to terminate McAllister and by aiding and abetting retaliation. The undated and unsigned HCRC charge does not mention McAllister's termination or retaliation, and does not contain allegations like or reasonably related to McAllister's present allegations concerning Smith and Cook's alleged involvement in the termination and retaliation. As a result, McAllister may not proceed on those claims.

By contrast, McAllister appears to have exhausted his claim that Cook aided and abetted "the discriminatory treatment and harassment of Plaintiff by never fulfill[ing] her promise of arranging for Mr. McAllister to have his own office [and] associated office equipment." ECF No. 38, PageID # 246. McAllister's HCRC charge contains allegations regarding USVI's failure to provide him with office space and resources that he

was allegedly promised.  See ECF No. 83-4, PageID # 804.
McAllister's claim in this lawsuit that Cook aided and abetted
the failure to move McAllister to his own office and to provide
him with office equipment is reasonably related to those
allegations and consistent with McAllister's original theory of
the case.  Further, even though Cook was not an expressly named
party to McAllister's HCRC charge, she was involved in the acts
giving rise to McAllister's complaints in the HCRC charge
regarding his office space and equipment.  See, e.g., ECF No. 75-
9, PageID # 675.

Exhaustion, however, is not enough for the claim to
survive summary judgment.  McAllister fails to identify anyone
who was allegedly aided, abetted, incited, compelled, or coerced
by Cook with respect to her alleged failure to move McAllister's
office or provide equipment.  See Maizner v. Hawaii, Dep't of
Educ., 405 F. Supp. 2d 1225, 1239 (D. Haw. 2005) ("[Section 378-
2(a)(3)] concerns the inciting, compelling, or coercing of one
person by another person.  There must be at least two persons
(someone who incites, compels, or coerces, and some other person
who is incited, compelled, or coerced).").

McAllister also fails to adequately identify what acts
Cook allegedly took to aid, abet, incite, compel, or coerce
discrimination.  McAllister says only that Cook aided and abetted
discrimination by "never fulfill[ing] her promise of arranging

41

for Mr. McAllister to have his own office [and] associated office equipment."  ECF No. 38, PageID # 246.  But Cook cannot be liable for aiding and abetting herself.  See <u>Ritchie v. Hawai`i</u>, Civ. No. 14-00046 LEK-BMK, 2014 WL 4905336, at *8 (D. Haw. Sept. 30, 2014) ("[I]t is legally untenable for Plaintiff to claim that [Defendant] aided and abetted himself.").

Given the present record, Cook is entitled to summary judgment on McAllister's claim that she violated section 378-2(a)(3) by aiding and abetting the alleged discriminatory failure to provide McAllister with office space and equipment.

### 3. Defendants are Entitled to Summary Judgment on McAllister's Intentional Infliction of Emotional Distress Claim.

Defendants contend that McAllister's intentional infliction of emotional distress claim is barred by the exclusivity provision of Hawaii's workers' compensation law.  See Haw. Rev. Stat. § 386-5.  While the court thinks it is unclear whether Hawaii law provides for section 386-5 to apply to claims like McAllister's, the court concludes that McAllister's intentional infliction of emotional distress claim fails for other reasons.

The exclusivity provision in section 386-5 of Hawaii Revised Statutes bars suits by employees against employers for alleged injuries caused by the alleged willful acts of co-employees acting in the course and scope of their employment.

42

See Yang v. Abercrombie & Fitch Stores, 128 Haw. 173, 183, 284 P.3d 946, 956 (App. 2012). The Hawaii Supreme Court, however, has declined to apply the exclusivity provision in section 386-5 to claims based on discrimination. See Furukawa, 85 Haw. at 18, 936 P.2d at 654; see also Bolla, 2014 WL 80554, at *2 ("Hawai'i state courts have applied the HRS § 386-5 exclusivity provisions to [intentional infliction of emotional distress] claims, unless they arise out of sexual harassment, assault, or discrimination.").

Because McAllister offers no admissible evidence specifically supporting his claim of intentional infliction of emotional distress, this court assumes that McAllister is relying on the facts he submits in support of his other claims as also constituting the outrageous conduct on which he bases his emotional distress claim. McAllister's intentional infliction of emotional distress claim, then, must be based on the discriminatory conduct he complains of in other claims. Whether or not an intentional infliction of emotional distress claim based on discrimination falls under the exclusivity provision in section 386-5, Defendants are entitled to summary judgment on McAllister's intentional infliction of emotional distress claim because McAllister fails to show a triable issue on the merits of that claim.

To establish a claim for intentional infliction of

emotional distress, a plaintiff must show "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Hawaii, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tseu ex rel. Hobbs v. Jeyte, 88 Haw. 85, 93, 962 P.2d 344, 352 (1998) (internal quotation marks omitted).

McAllister does not point to any evidence indicating that any act by Defendants was outrageous or beyond all bounds of decency. McAllister does not even discuss his intentional infliction of emotional distress claim in his opposition to Defendants' motion for summary judgment. See ECF No. 87. McAllister appears to be relying on the facts submitted in support of his other claims as the basis for his intentional infliction of emotional distress claim, but this court has determined in this order that the record does not support any of McAllister's other claims. His claim of intentional infliction of emotional distress, being derivative of those failed claims, also fails. See Gold v. Harrison, 88 Haw. 94, 103, 962 P.2d 353, 362 (1998) (intentional infliction of emotional distress claim that was derivative of failed defamation claim must fail).

# VI.     CONCLUSION.

McAllister's motion to strike is denied and Defendants' motion for summary judgment is granted.

This order disposes of all claims and all parties in this action.  Accordingly, the Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 14, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

McAllister v. United States Veterans Initiative, et al., Civ. No. 14-00057
SOM/KSC; ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION FOR SUMMARY
JUDGMENT